In the Matter of ARTHUR S. LOWELL, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 22, 1982

**APPEARANCES OF COUNSEL**

*James R. Cohen* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Oscar A. Bloustein* for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

Respondent was admitted to practice as an attorney and counselor at law in the courts of this State by this court on March 9, 1942.

On July 14, 1980 respondent was convicted, on jury verdict, in the United States District Court for the District of New Jersey of the crime of conspiracy to defraud the United States (US Code, tit 18, § 371) by paying kickbacks to employees of the General Services Administration

(GSA). (That is the description of the crime in the certified copy of the judgment; the indictment refers to conspiracy to defraud the United States essentially of the honest and unbiased services of the employees of the General Services Administration by making payments to such employees.) Respondent was sentenced on this conviction to a period of imprisonment of three years and a fine of $10,000; the execution of the prison sentence was suspended and respondent placed on probation for five years, requiring him to perform voluntary work of six hours per week for a public or nonprofit institution during the initial three years of his probationary period.

On May 8, 1981 that conviction was unanimously affirmed by the United States Court of Appeals for the Third Circuit, and thereafter, rehearing *en banc* was denied on July 10, 1981. (*United States v Lowell,* 649 F2d 950.)

The crime of which respondent was convicted was a felony under the laws of the United States; however, the analogous crime under the laws of New York would apparently be conspiracy in the fifth degree (formerly third degree) a class A misdemeanor (Penal Law, § 105.05; cf. Penal Law, § 200.00). For this reason, and because a necessary element of the crime was "fraud," the crime constituted a "serious crime" under section 90 (subd 4, par d) of the Judiciary Law. Unless good cause was shown to the contrary, respondent was required to be suspended upon receipt by the Appellate Division of the record of such conviction, until a final order of suspension, censure or removal should be made. (Judiciary Law, § 90, subd 4, pars f, g.) By the time the matter came to the attention of this court, however, the appeal had already been argued more than a month earlier in the United States Court of Appeals for the Third Circuit. In view of the very serious, and in some ways irreparable, consequences to an attorney of suspension, and the apparent likelihood of an early decision by the United States Court of Appeals, we held the mandatory suspension until the Court of Appeals came down with its affirmance. Thereafter, by order of July 16, 1981 this court suspended respondent effective August 17, 1981 and appointed the Departmental Disciplinary Committee as referee to take testimony in regard to the com-

mittee's charge of misconduct, and to report the same with its opinion thereon to this court.

At the hearing, respondent presented very impressive character and reputation evidence attesting to his excellent reputation and standing at the Bar, particularly in his major field of work with GSA, including even a letter from a former administrator of GSA, attesting to respondent's great integrity and high personal and professional code of ethics and spotless reputation.

With respect to the crime of which respondent was convicted, all parties recognized that under the controlling authority of *Matter of Levy* (37 NY2d 279), the issue of guilt may not be relitigated. However, *Matter of Levy* recognizes that the attorney may "introduce any competent evidence by means of which to explain or mitigate the significance of his criminal conviction. For this purpose, and within the sound discretionary supervision of the Appellate Divisions, the attorney should be permitted to offer any proof which is reasonably relevant to the ultimate issues — the character of the offense committed and the nature of the penalty, if any, appropriately to be imposed." (*Supra,* at pp 281-282.) Purporting to act under this rubric, evidence was offered that after respondent's conviction two conspirators had made exculpatory statements about respondent. Those exculpatory statements were not considered by the Court of Appeals because they were not part of the record before that court and because no motion for a new trial had been made in the District Court. (*United States v Lowell,* 649 F2d, at p 967.) It was further stated in the present proceeding that because of respondent's ill health and the possible dangerous consequences to his health of a new trial, respondent had decided not to make a motion for a new trial in the District Court.

We cannot agree that this evidence fell within the *Matter of Levy* exception of explaining or mitigating the significance of his criminal conviction; its effect was simply to cast doubt upon the respondent's guilt, an issue which under *Matter of Levy* "may not be relitigated". While *Matter of Levy* (*supra*) would be binding upon us whether we agree with it or not, we note that in a disciplinary proceeding such as this, as distinct from a motion for a new

trial or an actual new trial, the United States Attorney, who presumably has the fullest knowledge and evidence bearing on guilt, is not present; the two coconspirators who made the exculpatory statements are also not present or subject to cross-examination, nor are the prosecution witnesses.

Recognizing that it was not their province to determine whether respondent was the victim of the miscarriage of justice, the hearing panel nevertheless noted that a substantial argument could be made that respondent was not guilty of the crime of which he was convicted; that he has been convicted of a serious crime within the meaning of section 90 (subd 4, par d) of the Judiciary Law; and "in light of all the circumstances," the panel recommended that respondent be suspended from the practice of law for a period not to exceed 10 months, retroactive to August 17, 1981, and urged that in the interest of justice his suspension be terminated forthwith and that respondent be restored the right to again practice law.

The petitioner Departmental Disciplinary Committee moves to confirm the hearing panel's report. Respondent consents to it.

With respect to our judgment as to what the appropriate sanction should be, we note of course that the crime involved is a "serious crime" within the meaning of section 90 (subd 4, par d) of the Judiciary Law.

The closest cases on the facts that have been called to our attention, involving somewhat similar transgressions, are *Matter of Friedman* (37 AD2d 81), *Matter of Walpin* (46 AD2d 436), and *Matter of Schiff* (74 AD2d 161). The sanctions in those cases were suspensions for one or two years. We note that in each of these three cases the conduct only related to one isolated transgression. The present case involves a conspiracy to make regular monthly payments to GSA employees over a period of years, even though respondent's active participation largely antedated the Statute of Limitations cutoff date.

Furthermore, respondent is still under a criminal sentence of probation. We think an appropriate sanction would be suspension of respondent from the practice of law

for a period of 18 months (dating from August 17, 1981) or the expiration of his period of probation, whichever is later.

The motion to confirm the referee's report should be granted in part, and respondent should be suspended from practice as an attorney and counselor at law in the State of New York for a period of 18 months, effective as of August 17, 1981, or the expiration of his period of probation, whichever is later, and until the further order of this court.

SANDLER, J. P., SULLIVAN, ROSS, LUPIANO and SILVERMAN, JJ., concur.

Respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of 18 months effective as of August 17, 1981, or the expiration of his period of probation, whichever is later.