In the Matter of JULIUS STERN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 23, 1982

### APPEARANCES OF COUNSEL

*Sarah Diane McShea* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Lawrence S. Goldman* of counsel (*Goldman & Hafetz,* attorneys), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to practice in this court in 1961. Aside from a brief apprenticeship with a Queens general practice firm and a number of years as an insurance claims adjuster, respondent has engaged in the private practice of law as a sole practitioner, most recently (since 1971) at 350 Broadway in Manhattan. His practice consisted primarily of negligence work and assignments to represent indigents in the Family and Criminal Courts. Since 1972, when he joined the 18-B Panel, respondent has spent approximately half his working time in Family

Court, deriving about one third of his total income from these assignments.

In 1977, when respondent increased his load of assigned cases in Family Court, he initiated the system of billing that led to his present downfall. For each client assigned to him on a particular day, respondent billed from 9:30 A.M., the time the court calendar was read, until the time when that particular case was concluded. In other words, if respondent had three assignments on a particular day, each of which would require one hour of in-court time, he would bill the first from 9:30 to 10:30, the second from 9:30 to 11:30 and the third from 9:30 to 12:30, thus claiming reimbursement for a total of six hours of court appearances, when in fact, only three hours were spent in the courthouse. These vouchers were then submitted for payment in the Family Court clerk's office, when representation on each case was concluded, after approval by a Judge of the court. This practice of multiple billing was utilized by respondent from 1977 through 1979, resulting in over-billing in the amount of $3,721.25.

As a result of this practice, in 1981 respondent was charged in Supreme Court, by superior court information, with one count of grand larceny in the second degree, in satisfaction of which he was allowed to plead guilty to the class A misdemeanor of petit larceny. Respondent was sentenced to discharge conditioned on restitution.

This disciplinary proceeding was commenced in March, 1982. On May 4 we determined that respondent's offense was a "serious crime" under section 90 (subd 4, par d) of the Judiciary Law, and ordered him suspended as an attorney as of March 8, the date that the record of his conviction was filed here (Judiciary Law, § 90, subd 4, par f; *Matter of Stern,* 88 AD2d 510). The case was referred to a Special Referee, in accordance with section 90 (subd 4, par h), for a hearing and recommendation on the extent of discipline to be imposed. On August 11 the referee completed his assignment and recommended suspension for six months as of March 8. Petitioner now seeks confirmation of the recommendation of suspension, but for a period of three years, whereas respondent cross-moves for confirmation of the referee's recommendation as it stands.

Respondent has advanced several points in mitigation of severity of discipline. These are not, as petitioner urges, an attempt to relitigate the issue of his guilt (*Matter of Levy,* 37 NY2d 279; cf. *Matter of Lowell,* 88 AD2d 128).

We find the points advanced in support of mitigation to be without merit. For example, respondent argues that his billing practices did not harm his clients in any way or affect his representation of them. This disregards the fact that the real victim in this multiple billing scheme is the taxpaying public which supports the 18-B program. Second, respondent urges that there were no explicit directives prohibiting such practice until the 18-B administrator's memorandum of March 28, 1980, which "signalled a change" in the billing, effective April 1, 1980. Further, respondent analogizes his billing practice to the custom of negligence defense attorneys in per diem billing of insurance companies, process servers in billing attorneys, and his own method of billing in arbitration hearings held consecutively on the same day. He also implies that this was the prevailing practice among 18-B Family Court practitioners. These attempts at explanation must be rejected. The practice of multiple billing is so patently wrong that this should have been obvious to anyone with a law school education. We disagree with respondent's plea that his "misconduct did not in any way affect the integrity of the judicial process".

However reprehensible, it is nevertheless worth noting that such practices apparently were not uncommon in the 18-B system. Evidence of this is the 18-B administrator's memorandum of March 28, 1980, requiring that as of April 1 of that year all vouchers for payment would have to include an affirmation of no duplicative billing. This memorandum predated any investigation of respondent's practices. We read this memorandum as not an establishment of a new policy, but rather an attempt by the administrator to alert panel members to avoid such practice in the future. Our reference to this directive is not for the purpose of condoning or excusing such practices prior to April 1, 1980, but rather to indicate that respondent's actions were probably not unique.

Notwithstanding the weakness of respondent's argument for mitigation, the discipline recommended by the referee in this instance is appropriate. Respondent's record as an attorney over the last 21 years has, in the main, been otherwise unblemished. He has demonstrated recognition and acknowledgement of his wrongdoing, remorse and contrition for these acts of misconduct, and restitution in full. Respondent has been permanently removed from the 18-B Panel, he has suffered the stigma of a criminal conviction, his practice has fallen off precipitously, and he has suffered the ignominy and accompanying financial hardship of suspension of his livelihood.

The probation report in connection with his criminal conviction described respondent's crime as one of negligence rather than of intent. A number of witnesses, including members of the judiciary, have testified to respondent's good character, and their belief that this practice of multiple billing was an aberration that is not indicative of intentional criminal behavior. Respondent has pledged to adhere scrupulously to the rules of conduct for an attorney in the future.

Under these circumstances, the suspension recommended by the referee is suitable, and no additional sanctions are necessary.

Accordingly, respondent is suspended from the practice of law for a period of six months commencing March 8, 1982, the date of his original suspension pursuant to our prior order, and until the further order of this court.

KUPFERMAN, J. P., SANDLER, BLOOM, FEIN and MILONAS, JJ., concur.

Motion to confirm referee's report in part and disaffirm referee's recommendation denied and cross motion to confirm referee's report in its entirety granted, and respondent suspended for a period of six months commencing March 8, 1982 the date of his original suspension and until the further order of this court.