[780 NYS2d 342]

In the Matter of PETER D. HIRSCHL (Admitted as PETER DAVID HIRSCHL), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 29, 2004

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City *(Raymond Vallejo* of counsel), for petitioner.

*Zeldes, Needle & Cooper, P.C. (David P. Friedman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Peter D. Hirschl was admitted to the practice of law in the State of New York by the First Judicial Department on July 26, 1982, as Peter David Hirschl. At all times relevant to these proceedings, respondent maintained an office for the practice of law in Hartford, Connecticut, where he was also admitted to practice.

On or about September 23, 1999, respondent entered a guilty plea in the United States District Court for the District of Connecticut to one count of conspiring to engage in a monetary transaction in criminally derived property in violation of 18 USC § 1956 (h) and § 1957 (conspiracy to launder money). The conviction stemmed from respondent's involvement in a conspiracy to launder $230,000 received from a third party. Respondent conceded his awareness that the money was criminally derived. However, at his plea allocution, respondent averred his lack of knowledge that the unlawful activity involved the corrupt solicitation and acceptance of cash payments by his brother-in-law, Peter Silvester, which payments were intended to influence Silvester's performance in his capacity as Treasurer of the State of Connecticut.

In a previous order, the crime for which respondent stands convicted was deemed to be a "serious crime" under Judiciary Law § 90 (4) (d) (280 AD2d 172 [2001]). Respondent was suspended from the practice of law and directed to show cause before the Departmental Disciplinary Committee why a final order of censure, suspension or disbarment should not be made. Thereafter, on September 23, 2002, respondent was sentenced in connection with his Connecticut conviction to five months imprisonment, five months home confinement, three years supervised release, 200 hours community service and a $15,000 fine. We subsequently granted an interim application for an extension of the sanction hearing until 90 days from the date of respondent's release from prison/home confinement.

On January 16, 2002, the Superior Court for the Judicial District of Hartford suspended respondent from the practice of

law in Connecticut pursuant to an application for reciprocal discipline arising out of this Court's order of suspension. Similarly, by an order entered October 11, 2002, the United States District Court for the District of Connecticut suspended respondent until final disposition of the disciplinary proceedings.

In a decision dated May 20, 2003, the Superior Court of Connecticut ordered that respondent be suspended from the practice of law in Connecticut until January 1, 2005 based upon his criminal conviction for conspiracy to launder money (2003 WL 21299814, 2003 Conn Super LEXIS 1574 [2003]). During allocution, the court noted, respondent had admitted that he, his brother-in-law, Paul Silvester, and Christopher Stack knowingly and willfully entered into an unlawful agreement and conspiracy to engage in, and did actually engage in, monetary transactions involving criminally derived property, which had a value of over $10,000. From July 1997 to January 6, 1999, Silvester had been the Treasurer of the State of Connecticut and the sole fiduciary of the state's pension fund. During this period, Silvester accepted a portion of the sum that Stack had received as a consultant to certain private equity funds, in which the pension fund had invested. In return for these payments, Silvester improperly directed two private equity consulting agreements to Stack. However, there was no evidence that respondent was aware of this arrangement.

The court also found that, in approximately November 1998, respondent and Silvester agreed that Stack would retain respondent's legal services. However, no material legal services were to be provided, and it was agreed that the money Stack paid to respondent would be transferred to Silvester for his benefit. While there was no evidence that respondent derived any financial benefit from this conspiracy, on or about December 31, 1998, respondent sent a letter to Stack stating a fee of $450 an hour and requesting a $100,000 retention payment. This unusually high hourly rate was intended to disguise the large sums received from Stack, which ultimately totaled $230,000. Respondent sent neither bills nor work product to Stack and, at the direction of Silvester, deposited the money into various bank accounts and purchased Connecticut tax free bonds for Silvester's account. Although respondent was aware that the money received from Stack was criminally derived property, he did not know the nature of the specific unlawful activity, namely the corrupt solicitation and acceptance of cash payments by Silvester intended to influence him in the discharge of his official duties.

The Connecticut court directed that respondent be suspended from the practice of law until January 1, 2005. As mitigating circumstances, the court noted that for the three-year period between the date respondent pleaded guilty, September 23, 1999, to the date he was sentenced, September 23, 2002, he did not practice law. The court also noted the sentencing court's consideration of respondent's acts of charity, his civic activities, family circumstances, lack of a criminal record, and the absence of intended or actual benefit derived from the criminal activities. In aggravation, the court found, among other things, that respondent had engaged in a pattern of misconduct by accepting improper payments from Stack on two occasions and issuing a false retainer letter setting an hourly rate in excess of his standard fee. The Connecticut court concluded: "Viewing the totality of the circumstances and balancing the factors set forth in the ABA guidelines, it is ordered that Hirschl be suspended from the practice of law in Connecticut until January 1, 2005. If he has met all the conditions of his sentence he may be readmitted without application and without having to take the bar related courses or examinations requested by the petitioner."

Respondent now seeks an order imposing the same discipline as was imposed by the Superior Court for the Judicial District of Hartford and directing that he may be reinstated as an attorney in New York State upon being readmitted to the practice of law in Connecticut under the same conditions set forth in the May 20, 2003 decision of the Connecticut court. Respondent's counsel states that respondent has completed his sentence of confinement, his community service and paid the fine, and that his period of supervised release is due to expire in September 2006.

Counsel has also submitted a memorandum in support of reciprocal discipline in accordance with *Matter of McAuliffe* (308 AD2d 253 [2003]), noting that the federal court departed downward from the applicable guidelines when imposing sentence; that sentencing was delayed until three years after respondent pleaded guilty primarily because of the death of his attorney and the lack of a prompt sentencing request by either party; and that the public will be safeguarded if respondent were to be reinstated in New York upon his reinstatement in Connecticut in view of the oversight exercised by the Connecticut court. The memorandum further emphasizes that respon-

dent received no monetary gain, that he was unaware of the corrupt agreement between Silvester and Stack and that his involvement was an uncharacteristic departure from an otherwise responsible life. Character testimonials are attached to the memorandum, and respondent has expressed his remorse for his lack of judgment.

In reply, the Committee consents to respondent's application stating that, in light of the findings, the recommendation and the order of the Connecticut court, the record is sufficient for a determination of an appropriate sanction and, therefore, there is no need for a further hearing on this matter. In support the Committee similarly relies on *Matter of McAuliffe* (308 AD2d at 255), which, in lieu of ordering a hearing based on the attorney's "serious crime" conviction, directed a sanction of public censure similar to that imposed against the respondent in New Jersey. The Committee asserts that since most if not all of respondent's law practice was conducted in Connecticut and that state has the greater interest, it is appropriate to impose an equivalent sanction (*Matter of Lillard*, 255 AD2d 88 [1999]). As to reinstatement, the Committee maintains that this Court may similarly order that respondent be reinstated upon submission of proof of his reinstatement in Connecticut (*Matter of Coughlin*, 218 AD2d 194 [1996] [two-year suspension coterminous with Massachusetts suspension directing automatic reinstatement upon proof of reinstatement in that state]). In a subsequent letter, the Committee notes that this Court has generally declined to permit a lawyer convicted of a felony and serving criminal probation to practice law (*see Matter of Greenberg*, 212 AD2d 310 [1995]; *Matter of Smith*, 208 AD2d 290 [1995]). Thus, while agreeing that the record permits the determination of an appropriate sanction, it defers to this Court to impose whatever sanction it deems just, fair and reasonable.

Since a hearing is likely to result in the imposition of a sanction similar to that meted out by the Connecticut court (*see Matter of Lida*, 211 AD2d 255 [1995] [attorney convicted of 16 counts of money laundering suspended for three years]), the record is sufficient to make an appropriate sanction determination. As the Committee points out, it has been this Court's longstanding policy to preclude the practice of law by an attorney who is on probation (*e.g. Matter of Lida*, 211 AD2d at 257; *Matter of Lowell*, 88 AD2d 128 [1982]).

Accordingly, respondent's motion should be granted to the extent of continuing respondent's suspension until such time as

his probation has concluded, and until the further order of this Court, with respondent to be automatically reinstated to the practice of law in the State of New York upon submission of proof of both the termination of probation and his reinstatement in Connecticut.

BUCKLEY, P.J., NARDELLI, TOM, LERNER and FRIEDMAN, JJ., concur.

Respondent's suspension continued until such time as his probation has been concluded and until further order of this Court, as indicated.